RECEIVED
JAN 16 2024
RICHARD W. NAGEL, CLERK OF COURT
COLUMBUS, OHIO

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **ALFAR KYNWULF** | : | JUDGE MORRISON |
| (a.k.a. **DARRYL BLANKENSHIP**) | | MAGISTRATE JUDGE VASCURA |
| Plaintiff, pro se | : | Case No. **2:24 CV 0213** |
| vs. | | |
| **MAUREEN CORCORAN**, et al., | : | CIVIL RIGHTS COMPLAINT |
| Defendants. | | U.S.C. Title 42, Section 1983 |
| | : | U.S.C. Title 42, SECTION 2000cc |

## COMPLAINT

**I. The Parties to This Complaint :**

**A. Plaintiff:**

**Alfar Kynwulf (a.k.a. Darryl Blankenship)**
2107 Dixie Hwy., Hamilton, Ohio 45011

**B. Defendants:**

1. **Maureen Corcoran**, Director Ohio Department of Medicaid
50 West Town Street, Columbus, Ohio 43215

2. **Matt Damschroder**, Director Ohio Department of Jobs and Family Services
30 East Broad Street, Columbus, Ohio 43215

3. **Robert Bryne,** Assistant Ohio Attorney General, Collections Enforcement Section
30 East Broad Street, 14th Floor, Columbus, Ohio 43215

4. **Jamie Wilkinson,** Case Worker Butler County Department of Jobs and Family Services
315 High Street, 8th Floor, Hamilton, Ohio 45011

5. **Katelynn Hart,** Case Worker Butler County Department of Jobs and Family Services
   315 High Street, 8th Floor, Hamilton, Ohio 45011

6. **Stephanie Freeman,** Hearing Officer, Ohio Department of Jobs and Family Services
   30 East Broad Street, Columbus, Ohio 43215

7. **Susan Lehman,** Administrative Appeal Officer, Ohio Dept Jobs and Family Services
   30 East Broad Street, Columbus, Ohio 43215

8. **John Fitzmaurice,** Administrative Appeal Officer, Ohio Dept. Jobs and Family Services
   30 East Broad Street, Columbus, Ohio 43215

9. **Jocelyn Lowe,** Chief Legal Counsel, Ohio Department of Jobs and Family Services
   30 East Broad Street, Columbus, Ohio 43215

10. **John and or Jane Doe,** Ohio Department of Medicaid
    50 West Town Street, Columbus, Ohio 43215

11. **John or Jane Doe,** Ohio Department of Medicaid
    50 West Town Street, Columbus, Ohio 43215

12. **John and or Jane Doe,** Butler County Department of Jobs and Family Services
    315 High Street, 8th Floor, Hamilton, Ohio 45011

Defendants are agents of the State of Ohio within their respective agencies of Department of Jobs and Family Services, Department of Medicaid and the Office of the Ohio Attorney General. All Defendants are being sued in both their Individual and Official capacities.

**II. Basis for Jurisdiction:**

This case presents a federal question. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.

This case presents issues of religious freedoms and liberties being hindered under color of law

as well as violation of the constitutional protections against retaliation. These matters are protected under the First and Fourteenth Amendments to the United States Constitution; Title 18 USC Section 242 (Deprivation of rights under color of law); and the Religious Land Use and Institutionalized Persons Act of 2000 (42 USC 2000cc). The Ohio State Constitution, Article I, Section 7 reinforces that "All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own conscience.."

### III. Statement of Claim:

1. Plaintiff is an adherent of the Ancestral Ways religion, and is recognized as a religious leader and elder within the religion. Oaths are a sacred part of the religion and may not be broken, even after death. It is the plaintiff's belief that, Nastrand, one of the lowest pits of Hel in the afterlife, is reserved for adulterers, murders and oath-breakers. Thus, oath breaking is a very serious religious offense resulting in dire punishment in the afterlife that may not be escaped.

2. Plaintiff's home and property were purchased in 2014 under a religious oath. Plaintiff and co-religionist (Yvonne Groudle), unable to obtain property of their own, joined to purchase a property with one another. Promised the ancestors that if they could get property, no matter how small, it would be sanctified as a thank you to the gods and the ancestors.

3. Plaintiff's home was purchased with the land being sanctified to our gods, ancestors, and the spirits of the land. It was purchased so that plaintiff could live a life in accordance to their religious beliefs. An oath was taken to that effect, wherein it was oathed that each would obtain life insurance to protect the others continued possession of property after passing away.

4. Plaintiff's property has been lived upon in the manner of a religious sanctuary. Plaintiff gardens and eats as much as possible from the land itself. Plaintiff has designated areas for

wildflowers for native species. Plaintiff dedicated his home and plot of land to the gods, ancestors, and spirits of this land and advised them that plaintiff would live a life here in which they respect the land and that which lives upon it. Plaintiff has a sacred altar upon this property, they worship the ancestors and the land wights here. The land is holy in plaintiff's manner of thinking. It is his "othala." It is sacred and oath bound to the gods in plaintiff's way of thinking.

5.  Plaintiff is terminally ill with the diseases of pulmonary fibrosis, and congestive heart failure. In the Summer of 2021 Plaintiff was compelled to return his life sustaining supplemental oxygen to medical provider as he was financially incapable of paying for the equipment due to unresolved billing errors (Medical coding errors). At that point, Ohio State Representative Sara Carruthers reached out and discovered that plaintiff was eligible for Ohio Medicaid within the Specialized Recovery Services (SRS) program. Plaintiff was placed within the Medicaid SRS program.

6.  Upon enrollment within the SRS program Plaintiff noted the requirements of the Medicaid Estate Recovery (MER) and that they would have him violate sincerely held religious beliefs and hinder religious practice. They would, at his death, force his estate to be turned over to the state. This was troubling for plaintiff as he had previously oathed his estate to co-religionist and co-owner (Yvonne Groudle) to continue the religious sanctuary after his death. This idea of forfeiture after death, violating a religious oath, is terrifying for the plaintiff. It had an immediate chilling effect upon plaintiffs desires and ability to practice his religion as he had before. He was no longer motivated to offer as much devotion towards his beliefs knowing that if he were to die under the mandates of the MER that his oath would be made null and void and thus condemning his soul to Nastrand to be continuously devoured and spit upon by vile serpents. Plaintiff's

religious activities, expression and devotions were severely chilled at this thought and could not be tolerated by the plaintiff.

7. On February 14, 2022, email communications were initiated between plaintiff and defendant Byrne entitled " Religious exemption to Medicaid Estate Recovery", in which plaintiff sought exemption or waiver, on religious grounds, from the MER. Plaintiff asserted that the MER had a chilling effect upon his daily religious beliefs and practices. On February 24, 2022, defendant Bryne, after discussing the matter with other unnamed Assistant Attorneys General and agents of the Ohio Department of Medicaid, denied plaintiff's religious accommodation request in a letter stating:

" Dear Mr Kynwulf. I have discussed all your communications with several attorneys and policy staff from both the Attorney General's Office and the Ohio Department of Medicaid. We have all reached the same conclusion RFRA and RLUIPA are not applicable to Medicaid Estate Recovery. Nothing in the undue hardship provisions in Ohio or federal law would allow such a hardship waiver. Medicaid Estate Recovery does not take effect until a Medicaid recipient passes away. It is based on many factors that are speculative at this point in time including what assets are owned by an individual at time of death, amount of Medicaid services paid on an individuals behalf, and and any dependents of the individual that would qualify for an exception."

To date defendant Bryne has refused to identify the parties he collaborated with to reach the decision to deny the the religious accommodation request citing confidentiality under attorney client privilege. The Ohio Department of Medicaid later stated in writing that there was no attorney client relationship in that matter. Plaintiff will seek to identify these putative defendants through the discovery process.

8. On February 16, 2022 Plaintiff submitted a written request, via email, to Ohio Medicaid asking that he be removed from Medicaid SRS program and placed back within Medicaid Premium Assistance Program (MPAP). Plaintiff stated that provisions of the SRS program,

specifically the MER, infringed upon his religion and he must withdraw as he was being informed that no religious accommodations could be had. Plaintiff did state that if he could obtain religious accommodation in future he would return to the badly needed program. Plaintiff was subsequently removed from Medicaid SRS in March, 2022 pursuant to his request to preserve religious liberties.

9. On or about February 16, 2022 plaintiff spoke via telephone with Defendant Jamie Wilkinson, Ohio Department of Jobs and Family Services, who attempted to convince plaintiff to remain with Medicaid SRS. Plaintiff insisted that he be removed to protect his religious beliefs. Plaintiff was informed that he would be removed pursuant to his request, but was "cautioned"(threatened) that the removal could later be overridden and he be placed back into the program contrary to his wishes or religious objections. Plaintiff was "cautioned" that this could be done by alleging plaintiff to be "over income qualifications" and transferring him back to SRS. Plaintiff stated he would deal with that problem when he crossed that bridge. **Defendant Wilkinson was kind enough to write her "cautions" in a log which was subsequently obtained by the plaintiff.**

10. On or about July 25, 2022, plaintiff, as he had been forewarned as stated in paragraph 9 above, received a "Notice of Action" informing him that he had been removed from the MPAP program under the pretense that he no longer qualified for MPAP as being "over income qualifications", and was placed back into the SRS program which has provisions that violate plaintiffs sincerely held religious beliefs. This action was taken in disregard of plaintiff's prior self removal from the program to protect sincerely held religious beliefs.

11. On or about July 27, 2022 plaintiff filed a "Request for a State Hearing" to challenge the

"Notice of Action" of July 25, 2022 forcing him, without his consent, and over his prior religious objections, back into Medicaid SRS. Plaintiff asserted **(A)**, that his income qualifications had been manipulated (as previously stated would be done) to compel him back into SRS program when in fact his income qualifications had not changed. Plaintiff then asserted, **(B)** that as he does qualify for the SRS program, and as the state saw fit to place him back into the SRS program over his prior self removal on religious grounds, that he must insist on being heard on the merits of his claim for a religious accommodation.

**12.** A State Hearing was scheduled to take place on August 15, 2022 to hear plaintiff's concerns as stated in paragraph 11 above. However, prior to the hearing taking place, defendant Hart took retaliatory action against plaintiff by terminating him from the SRS program for having engaged in protected activity of seeking the state hearing. Defendant Hart then telephoned plaintiff and asked that he withdraw his state hearing request as she had remedied the matter by terminating him from Medicaid SRS. Plaintiff stated that he was not seeking termination from SRS but wished for a hearing on the religious accommodation so that he could remain in the program. Plaintiff stated defendants had taken the extreme action of placing plaintiff back into the program by manipulating and falsifying his income qualifications and over his religious objections, so they could now hear his plea for religious accommodations and permit plaintiff to elect what action to take if religious accommodation denied.

**13.** On August 15, 2022 a State Hearing took place via telephone conducted by defendant Freeman. Butler County Department of Jobs and Family Services was represented by defendant Hart. At the hearing defendant Hart acknowledged that she had communicated with plaintiff via telephone in an attempt to have him withdraw his request for a state hearing. She informed

defendant Freeman that plaintiff had been inadvertently reinstated to the SRS program but she had remedied the matter by terminating Plaintiff from the program. Defendant Hart was not, however, able to explain how plaintiffs "income qualifications" had been altered to permit the inadvertent reinstatement into SRS. Plaintiff, unlike defendant Hart, was not permitted to state his case uninterrupted, but he did assert that he did not request to be removed from the SRS program and he was seeking a religious accommodation. Defendant Freeman did not seem interested in permitting Plaintiff to state his position at the state hearing as she repeatedly interrupted him to lecture that no one in Medicaid has authority to grant religious accommodations.

**14.** On August 23, 2022, defendant Freeman issued a "State Hearing Determination" in which she found that plaintiff was inappropriately placed back into Medicaid SRS as his income had not changed. However, she denied plaintiffs request for religious accommodation finding that no one in Medicaid had authority to grant such an accommodation. Defendant Freeman further found that defendant Harts actions of terminating plaintiff from the SRS program for having requested a state hearing to have been appropriate. She ignored the plaintiff's insistence that he was not seeking termination from SRS. Rather, she upheld the retaliatory action of terminating plaintiff from SRS as he had engaged in protected activity of requesting a state hearing.

**15.** On August 29, 2022 Plaintiff appealed the state hearing decision to an Administrative appeal alleging that (A) defendant Hart had retaliated against him by terminating him from Medicaid SRS for having engaged in protected activity of seeking a state hearing, and (B) seeking reinstatement within SRS with religious accommodation. On September 9, 2022, Defendants Susan Lehman, John Fitzmaurice, and Jocelyn Lowe affirmed the hearings officers

findings that (i) no retaliation had occurred in removing Plaintiff from SRS for seeking state hearing, and (ii) there exist no provisions within Medicaid to seek a religious accommodation.

16. On November 8, 2022, Plaintiff contacted the Legal Division of Ohio Medicaid via email, and copied Defendant Maureen Corcoran, to seek a religious accommodation to the Medicaid Estate Recovery so that he could better partake of a state benefit for which he was eligible. On April 11, 2023 unknown defendant John or Jane Doe denied the religious accommodation request. Ohio Medicaid has repeatedly refused to name the individual(s) denying the religious accommodation request, asserting that the names are confidential under attorney client privilege.

17. On or about April 21, 2023, plaintiff moved for a state hearing from the April 11, 2023 denial of religious accommodation referred to in paragraph 16 above. On or about April 27, 2023 Defendant John or Jane Doe summarily denied the request for a state hearing asserting that pursuant to 5101:6-5-03 of the Ohio Administrative Code "we do not have the legal authority to hear your case." On or about April 28, 2023 Plaintiff moved for an Administrative Appeal on this matter. On or about May 3, 2023, an "Administrative Appeal Decision" was rendered by an unidentified person or persons asserting the denial of a state hearing was correct as they have no authority to hear the matter. They found specifically that:

"The Appellant requested a state hearing of not being granted a waiver from Medicaid state recovery. The Bureau of State Hearings denied his request as not being appealable. The Appellant appealed, indicating that he disagreed with the denial of his state hearing request without a hearing. Per Ohio Admin. Code 5101:6-5-03(C)(3), a state hearing request **MAY BE DENIED** (emphasis added) if "the request concerns an issue that is not appealable under the provisions of rule 5101:6-3-01 of the Administrative Code.""

18. The Admin. Code cited in paragraph 17 above, however, in no way supports the claim that the religious accommodation request is not appealable, it simply states they **MAY** deny appeals that are not specifically listed. The code in no way mandates that they **MUST** or **SHALL** deny

plaintiffs religious accommodation request or appeal therefrom. It is plaintiffs position that they are simply deliberately indifferent to the constitutional nature of the claim. Plaintiff asserts they abused their discretion in denying a state hearing. This will be evidenced by the fact they falsely assert they have no authority to hear the matter, when in fact they have discretion to do so. It is also evidenced by the fact they elect to distance themselves from the constitutional magnitude of the matter by at all times refraining (as will be demonstrated they do elsewhere) from mentioning the religious nature of plaintiffs claim. Here, as elsewhere, they merely refer to the denial of the "waiver".. never acknowledging the religious nature of the request. This appears a deliberate attempt to minimize plaintiffs claim and request.

**19.** On or about April 19, 2023, for the second time, an unidentified defendant John or Jane Doe issued a "Notice of Action" placing plaintiff back into the Medicaid SRS program after plaintiff had been twice removed from said program as as it substantially burdened his religion. In doing so plaintiff's Medicare Advantage Plan was canceled (also canceling plaintiffs doctors and medical network). On or about April 28, 2023 Plaintiff moved for a state hearing to contest his being reinstated to the SRS program absent a religious accommodation and against his will and without his consent as the program substantially burdens his religion.

**20.** On May 24, 2023 an unsigned document entitled as a combined "State Hearing Decision" and "Final Administrative Decision and Order" was issued in regards to the state hearing request referred to in paragraph 19 above. In this document it is acknowledged that the repeated instances of reinstating plaintiff into the Medicaid SRS program were in error, but several excuses are given for the repeated acts of plaintiff being continually reinstated into the SRS program. These reasons are contradicted directly by the reasoning given within the "Notice of Actions" dated July

25, 2022 (paragraph 11 above) and April 19, 2023 (paragraph 19 above).

21. Plaintiff emailed Defendants Maureen Corcoran, Director of Ohio Medicaid and Matt Damschroder, Director of Ohio Jobs and Family Services on April 22, 2023 to complain of the repeated refusal to grant a religious accommodation in regards to the Medicaid Estate Recovery provision of the SRS program.

22. Plaintiff emailed Defendants Maureen Corcoran, Director of Ohio Medicaid and Matt Damschroder, Director of Jobs and Family Services on April 21, 2023 to complain on the repeated placement of plaintiff back within the SRS program, absent a religious accommodation, over his objections and without his consent and knowledge which substantially burdens his religion.

23. Defendants Corcoran and Damschroder, as Directors of Ohio Medicaid and Ohio Jobs and Family Services, respectfully, have acted with deliberate indifference to the multiple acts of failing to entertain plaintiff's requests for religious accommodations, and to the repeated actions of plaintiff being removed from his Medicare Advantage Plan and forced back into the Medicaid SRS program over his religious objections.

24. Defendants Corcoran and Damschroder, as Directors of Ohio Medicaid and Ohio Jobs and Family Services, respectfully, have failed to implement any policy or guidelines in which a religious accommodation may be sought, or any negative determination of same may be appealed. There is no policy or guideline to follow or instruct as to how a religious accommodation may be sought, reviewed or appealed. In fact, it has repeatedly been stated that there exist no rule or policy to permit the religious accommodation, that no one within Ohio Medicaid has authority to grant a religious accommodation, and that there may be no appeal or

further review of any decision to deny a religious accommodation request.

25. Plaintiff has for the past two years, despite being terminally ill, refrained from any and all medical treatment and procedures (other than two general check-ups with primary care physician and a single CT Scan) based upon his fear and anxiety that he may unknowingly be enrolled within the Medicaid SRS program at the time of treatment. This is as Defendants have placed plaintiff within the program in the past without prior notice and plaintiff not discovering the placement until after the fact. Plaintiff has not seen his cardiologist for congestive heart failure nor his pulmonologist for his terminal illness of pulmonary fibrosis in the past two years because of this fact. The stress and anxiety of this matter has been overwhelming for the plaintiff, as implementation of the Medicaid Estate Recovery, according to plaintiff's sincerely held religious beliefs, would condemn him to Nastrand, the lowest pits of the underworld. Plaintiff has been compelled to forgo medical care and treatment to prevent inadvertent forced violation of sacred religious oaths. Plaintiff never knows when he may, without his knowledge, be enrolled within Medicaid SRS. As such, plaintiff refrains from seeking any medical care that he may desperately need for fear of the treatment occurring while unknowingly enrolled in the religiously offensive SRS.

### IV. PREVIOUS LAWSUITS

1. Plaintiff, **Miller v. Wilkinson**, Case No. 2:98-cv-0275 (S.D. Ohio), **Cutter v. Wilkinson**, 544 U.S. 709 (2005).

2. Plaintiff, **Eberle v. Wilkinson**, Case No. 2:03-cv-0272 (S.D. Ohio).

3. Plaintiff, **Ratcliff v. Moore**, Case No. 1:05-cv-0582 (S.D. Ohio).

4. Plaintiff, **Kynwulf v. Warth**, Case No. 2:02-cv-0418 (S.D. Ohio).

## V. RELIEF SOUGHT:

1. Declaratory Judgment finding that Plaintiff is, and was, entitled to his constitutionally requested religious accommodation to be exempted from the Medicaid Estate Recovery.

2. Declaratory Judgment finding that plaintiff was retaliated against when plaintiff was terminated from the SRS program after having requested a state hearing, and before said hearing occurred.

3. Declaratory Judgment finding that constitutional rights of plaintiff were violated each time plaintiff was reinstated into the Medicaid SRS program (absent a religious accommodation) after he had removed himself from the program to protect his religious liberties.

4. Injunctive Relief prohibiting Defendants from again terminating Plaintiffs Medicare Advantage Plan and placing him within the religiously offensive Medicaid SRS program absent either (1) plaintiff requesting to be placed within the program, and / or (2) defendants granting plaintiff a religious waiver or exemption to the Medicaid Estate Recovery.

5. Injunctive relief requiring defendants to implement a written policy detailing process for reviewing a religious accommodation request and an appeal process thereto.

6. Compensatory damages and relief for any and all cost of this action, including copies, postage, filing fees if any, attorney fees if any, court cost and any other cost associated with this action.

7. Punitive damages in the sum of one million dollars ($1,000,000.00).

8. Any and all other financial or declaratory or injunctive relief that may be deemed appropriate by this court.

I hereby certify under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed on this 15th day of January, 2024.

_____
Signature of Plaintiff